## LULU C. LEE v. MINNIE ZASKE AND ANOTHER.[1]

November 20, 1942.

No. 33,146.

*Hugh G. Parker* and *Murphy, Johanson & Winter,* for appellant.
*Sexton, Mordaunt, Kennedy & Carroll* and *William P. Berghuis,*
for respondents.

[1]Reported in 6 N. W. (2d) 793.

LORING, JUSTICE.

Action to recover for the death of Theodore L. Lee, who was killed by the defendant Minnie Zaske's automobile on March 8, 1940, while it was being driven by the defendant Erwin Zaske. Defendants had a verdict, and plaintiff comes here on appeal from the judgment after denial of her motion for a new trial.

The principal questions presented are whether the court erred (1) in submitting the question of decedent's contributory negligence to the jury; (2) in charging the jury with reference to the emergency rule as applied to the defendant driver's conduct; and (3) whether the evidence compels a finding of negligence on the part of the driver. Consideration of the questions involved is rendered more difficult by the absence of a plat as required by the admonition of this court contained in the printed calendar. Numerous cars were involved in the situation leading up to the fatal accident, and a plat would have been most helpful not only on the argument but in later consideration of the case by this court. Much of the testimony was put in by using toy automobiles on a flat surface. While this may be an easy way of presenting a case of this kind to a jury, it does not make a record intelligible to an appellate court unless positions are definitely fixed on a plat.

The fatal accident occurred at about 7:30 in the evening on highway No. 29 between Deer Creek and Parkers Prairie in Otter Tail county. At this point No. 29 is a black-top highway running north and south. On the evening in question, it bore more than its usual traffic on account of a basketball game at Parkers Prairie. Numerous cars were traveling south toward Parkers Prairie, and some were traveling north. There was snow to the depth of about 18 inches in the ditches, but the highway was clear and dry. The snow was heavy and crusted hard enough in spots to bear a man's weight. No intersection is involved, but to the north of the place of accident there is a rise in the grade, the crest of which is about one-half mile from the point where the accident occurred. About 15 minutes before Lee was killed, a

pick-up truck, referred to in the evidence as the "Fiskum truck," was going north. It had tire trouble and stopped near the scene of the accident partly on the highway. It was being followed by the Wagner car, which was meeting the Streit car at about the same point. Probably blinded by the Streit lights, the Wagner car collided with the Fiskum truck, pushing it forward toward and farther into the ditch on the east side of the road. When the Wagner car stopped it was about 25 feet behind the Fiskum truck and in a position where its left wheels were on the southbound lane. The Streit car was hit by the Wagner car and swung into the east lane. It was tipped on its side with its front toward the north. Other cars from the north swung out onto the west shoulder and stopped. The record is not clear as to their number. The Lee car was among those that reached the scene shortly after the accident. Mr. Lee was driving, and he parked on the west side of the highway either opposite to or about two car lengths north of the Fiskum truck. There is some evidence that his left wheels were on the traveled part of the highway. Lee left his wife in the car and got out to inquire about the people hurt in the Streit car. While this was being done, other cars came from the north and passed through the scene of the accident on the west lane. By this time numerous persons had arrived at the scene and parked their cars. Some of them were walking around the cars involved in the accident. It was at this time that two cars approached rapidly from the north, the first the Schendel car and the second the car of the defendant Zaske. Zaske's car was occupied by six people, all on their way to the basketball game. The people in the two cars were acquainted and had been traveling together for about four miles from the point where Zaske entered the highway. Zaske had passed Schendel at 60 miles an hour. Schendel then passed Zaske going 10 or 15 miles faster. Mrs. Zaske then complained of the speed, and Zaske reduced it to 50 miles. All of the persons in these two cars denied that the headlights on the cars facing north on the east side of the highway were lighted. However, some of them did see the taillight on a

car on the west side. Someone flagged down the Schendel car, which pulled to the left into the northbound lane of traffic and stopped north of the cars parked on the east side of the road. Zaske, who was following the Schendel car at undiminished speed, passed it on its right and at the same time passed the Lee car on its left, admittedly at a speed of 50 miles per hour. Zaske's brakes were defective and were so found to be by the highway patrolmen who tested them after the accident. The defendant Erwin Zaske admitted to the highway patrol officers who tested his brakes that they had never been good at high speeds. These officers, who found that the brakes were fairly effective at 20 to 25 miles per hour but that at 50 miles an hour the car could not be stopped in less than 375 to 400 feet, testified that if the brakes were in normal working order the car should be stopped in 160 feet. When Erwin himself made the brake test he could not stop the car in 400 feet. He denied neither his admissions nor the result of the tests. As he passed the Schendel and Lee cars, Zaske said that he saw a car in the west lane in front of him; that he tried to apply his brakes, and when they would not hold he deliberately pulled to the left side of the road toward the ditch. He struck the Streit car a glancing blow and then ran through the snow in the ditch 160 feet farther before he was able to stop. It was while he was crossing the shoulder or the east side of the northbound lane that he struck and instantly killed Lee, who was standing close to the edge of the east shoulder in front of the Streit car. Zaske says that he did not see Lee. The two men with whom Lee was talking just before his death jumped to safety, but in their haste to get out of Zaske's way they failed to observe what Lee did, so there is no evidence whatever as to Lee's actions or conduct except that just before he was struck he was standing in the position indicated and jumped, but in what direction the record does not say.

■ The court submitted to the jury the question whether plaintiff's decedent was guilty of contributory negligence. This we think was error. The contention of defendants that there was con-

nection as cause between the parking of Lee's automobile with its left wheels on the pavement and his death is not well founded. There is not a syllable in the evidence that the place where the Lee car was parked had any effect whatever upon Zaske's conduct or the management of his car. He says himself that he passed the Schendel car and the cars on the other side of the highway under perfect control except as to speed. His car did not touch Lee's car or any car until after he turned off to the left to go between the Wagner and the Streit cars. Nor is there support for defendants' other contention that Lee was negligent in standing where he did. We cannot see how a man of ordinary prudence could reasonably anticipate that any driver would be likely to come speeding through the space between the Wagner and the Streit cars. The burden of proof was on defendants to show that Lee was guilty of contributory negligence, and there is total absence of proof as to what Lee did when he and his two companions first became aware that the Zaske car was headed for them. His two friends, between whom he was standing, jumped and ran in either direction. One of them said Lee jumped, but he did not say in what direction he jumped or where he was when he was struck. The presumption of due care does not vanish in the absence of evidence showing the conduct of the deceased.

■ We come then to the question of sudden emergency. Passing for the moment the error in the tenor of the court's charge on that subject, we will dispose of the question whether any charge at all should have been given on the evidence before the court. It seems obvious to us that the defendant Erwin Zaske brought on the emergency by driving into the situation at the speed he did with defective brakes. He had six people in his car, a load considerably heavier than when the brake tests were applied on the following day. His own testimony shows that he was well aware of the defective brakes and knew or should have known that he could not stop in less than 400 feet. He said that he was traveling 150 feet behind the Schendel car when it swung to the left to park in the east lane. Had his brakes been in normal working

order and had he then applied them, he should have been able to stop before he reached the Streit car. At worst, he could have so slowed down that Lee would have had time to escape, since, according to the testimony of the experts, at the rate of 50 miles per hour he should have been able to stop in 160 feet if his brakes had been in normal working condition. But, driving as he did, with faulty brakes, he contributed to the emergency with which he was confronted, and hence the emergency rule was inapplicable. Dentinger v. Uleberg, 171 Minn. 81, 213 N. W. 377.

On the question of whether the evidence compels a finding of defendant's negligence, we cannot escape the view that it does. The same reasoning which led us to the conclusion that the emergency doctrine could not be applied in his favor compels a conclusion that his conduct was negligent. He admits that his brakes were defective at higher speeds, and he admits that he drove into the lane between these parked cars at a speed of 50 miles an hour. The violence with which he struck Lee and the distance which it took him to stop in the heavy going in the ditch corroborates his testimony as to speed. Minn. St. 1941, § 169.67 (Mason St. 1940 Supp. § 2720-255), requires brakes adequate to control a car and that they be maintained in good order. Failure to have such brakes is, under the statute, *prima facie* evidence of negligence. *Id.* § 169.96 (§ 2720-291); Nicholas v. Minnesota Milk Co. 212 Minn. 333, 4 N. W. (2d) 84; Olson v. D. M. & I. R. Ry. Co. 213 Minn. 106, 5 N. W. (2d) 492. There is no evidence here to rebut the *prima facie* case. That the failure to have such brakes contributed to Lee's death is too obvious for comment.

In the light of our view on the foregoing questions, there is nothing for a jury to pass upon except the question of damages. This court has said that neither an appellate nor a trial court should put parties to the trouble and expense of a retrial of all the issues if it is possible to avoid it. Nash v. Kirschoff, 161 Minn. 409, 201 N. W. 713. In instances too numerous to cite we have sent cases back for trial on part of the issues where either a well supported verdict or finding has settled other issues. See

1 Dunnell, Dig. & Supp. § 430. We see no distinction between such cases and a case where, as here, part of the issues are settled by evidence upon which reasonable minds could not differ and consequently have become questions of law. In a civil case no constitutional right to a jury trial or any other fundamental right is thereby infringed. When evidence is conclusive, as here, it is no longer a jury question. Other states have so regarded like situations. In Lavigne v. Nelson, 91 N. H. 304, 18 A. (2d) 832, a motor vehicle collision case, the jury disagreed, and, under the New Hampshire practice, the case went to the supreme court, which regarded the evidence of liability conclusive and sent the case back for trial on the issue of damages only. And in Lunde v. Minch, 105 Conn. 657, 136 A. 552, an action for damages for breach of contract to convey real estate, which went for the defendants in the lower court, the supreme court of Connecticut, finding the evidence conclusive in favor of the plaintiff on the question of liability, sent the case back for trial on the question of damages only. In Tudor Arms, Inc. v. McKendall Land Co. Inc. 63 R. I. 52, 6 A. (2d) 735, where an action for conversion went for the defendant below, the supreme court of Rhode Island regarded the record as conclusive of liability on the part of the defendant and sent the case back for a new trial solely upon the issue of damages for conversion. True, the appellants here asked for a new trial on all issues but challenged the verdict as contrary to the evidence. We do not think that because appellants ask for a retrial of all issues, including those which, properly viewed, were already determined by conclusive evidence in their favor, the courts must be burdened by issues so already determined.

The plaintiff complains that the county attorney who prosecuted Zaske for criminal negligence in killing Lee appeared for the Zaskes in defense of this action. No doubt that fact had its influence on the jury. The inferences it might draw are obvious. We do not look with favor upon such conduct. It does not further justice. But in this case the county attorney consulted and got the consent of counsel for plaintiff before making his appear-

ance. Consequently plaintiff is in no position to challenge his conduct.

The judgment appealed from is reversed and a new trial granted on the issue of damages only.

No statutory costs will be allowed appellant because of her failure to comply with our admonition in re a plat or diagram. So ordered.

STREISSGUTH, JUSTICE (dissenting in part).

To the extent that the majority opinion holds that the verdict is against the great preponderance of the evidence entitling plaintiff to a new trial, I am in full accord, but I must respectfully dissent from the direction remanding the case for trial on the issue of damages only.

Here neither party moved for a directed verdict during the trial. Had the verdict been in favor of plaintiff instead of defendants, we could not have granted judgment for defendants notwithstanding a verdict to the contrary, no motion for a directed verdict having been made. 3 Dunnell, Dig. & Supp. § 5079; Stewart v. Menzel & Co. 181 Minn. 347, 232 N. W. 522; Timmins v. Pfeifer, 180 Minn. 1, 230 N. W. 260; Flesher v. St. Paul Apt. House Co. 151 Minn. 146, 186 N. W. 232, 26 A. L. R. 1246; Sayer v. Harris Produce Co. 84 Minn. 216, 87 N. W. 617. Yet the majority proposes that we now entirely disregard the provisions of Minn. St. 1941, § 605.06 (Mason St. 1927, § 9495), and in effect direct judgment notwithstanding the verdict on the decisive issue of negligence, and this in favor of a party who made no motion for a directed verdict during the trial and who in her motion after verdict specifically asked for "a new trial of all of the issues," and nothing more. If, as stated in 3 Dunnell, Dig. & Supp. § 5080, "a party is not entitled to a judgment under the statute unless, after verdict, he specifically moves for it," he should not be granted what is equivalent to a judgment in his favor without either a motion for directed verdict during the trial or a motion for judgment after its conclusion.

The limitations upon the powers of this court in the absence of a motion for directed verdict were recognized in Skolnick v. Gruesner, 196 Minn. 318, 325, 265 N. W. 44, 48, where Mr. Justice Stone said:

"The only thing which prevents our directing judgment notwithstanding the verdict is the absence from the record of any motion by defendant for a directed verdict. * * * The present record is barren of anything showing that plaintiff is entitled to recover. Notwithstanding, all we can do is to reverse the order under review insofar as it denies a new trial."

I concede that in a fact situation such as here presented, it was an abuse of discretion on the part of the trial court not to grant a new trial and submit the case to a new jury. Durst v. M. St. P. & S. S. M. Ry. Co. 171 Minn. 164, 213 N. W. 738; Patzke v. M. & St. L. R. Co. 109 Minn. 97, 123 N. W. 57; Peterson v. C. G. W. Ry. Co. 106 Minn. 245, 118 N. W. 1016; Martin v. Courtney, 75 Minn. 255, 77 N. W. 813; Messenger v. St. Paul City Ry. Co. 77 Minn. 34, 79 N. W. 583; Voge v. Penney, 74 Minn. 525, 77 N. W. 422. And, should a second trial produce no more substantial evidence in defense than that produced at the first trial, I feel it would be the duty of the trial court, at the close of proof and upon proper motion, to direct a verdict for the plaintiff, the amount thereof to be determined by the jury. But for this court now to adjudicate finally upon the issues of negligence and proximate cause by limiting the issues upon a retrial to that of damages only, and this without a motion by the plaintiff in the court below, is to disregard statute as well as precedent.

The practice of excluding from a new trial issues which have been determined satisfactorily on the first trial has frequently been followed by this court. Sleeter v. Progressive Assur. Co. 191 Minn. 108, 253 N. W. 531; Stolp v. Reiter, 190 Minn. 382, 251 N. W. 903; Ertsgaard v. Bowen, 183 Minn. 339, 237 N. W. 1; Hagstrom v. McDougall, 131 Minn. 389, 155 N. W. 391. In each of these cases the original verdict of the jury upon the excluded issues was left undisturbed, not entirely brushed aside and a

diametrically opposite decision on the facts substituted therefor. The new trial on the one issue was without interference with the jury's findings on the other issues. See Yazoo & M. V. R. Co. v. Scott, 108 Miss. 871, 67 So. 491, L. R. A. 1915E, 239 and note, Ann. Cas. 1917E, 880; Lisbon v. Lyman, 49 N. H. 553; Simmons v. Fish, 210 Mass. 563, 97 N. E. 102, 25 Ann. Cas. 1912D, 588, all containing extensive review of authorities. So, in cases where juries have allowed inadequate or excessive damages, this court has repeatedly allowed their verdict to stand on the issue of lia-' bility, granting new trials only on the issue of damages (5 Dunnell, Dig. & Supp. § 7079, and see 16 Minn. L. Rev. 193; 5 C. J. S., Appeal and Error [New Trial], § 1935, note 45); but that is not what the majority here proposes to do. It proposes to substitute its verdict on the main issue for the verdict of the jury, and this in an action at law in which a jury trial is a fundamental right.

The limit of our power, in my opinion, is to direct a new trial upon all of the issues. The judgment appealed from should therefore be reversed without any further directions to the court below.

PIRSIG, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Streissguth.