**HUDSON et al. v. INTERNATIONAL EX- TERMINATOR CORPORATION.**

**No. 10124.**

Court of Civil Appeals of Texas. Austin.

March 4, 1953.

Rehearing Denied March 25, 1953.

124

Julius F. Franki and W. Sale Lewis, Austin; Saulsbury, Skelton, Everton, Bowmer & Courtney, Temple, by Julius F. Franki, Austin, for appellants.

Hart, Brown & Sparks by J. H. Hart, Austin, for appellee.

ARCHER, Chief Justice.

This is an appeal from an order of the trial court granting a temporary injunction.

The temporary injunction restrains, pending a trial on the merits, a violation of an agreement made by appellant Hudson with appellee that for twelve months after Hudson quit working for appellee in servicing certain of appellee's customers, Hudson would not solicit for servicing agreements or service any of the customers of appellee who were being serviced by Hudson at the time he quit.

The contract between the appellant and appellee dated September 15, 1950, in part reads:

"Whereas Manufacturer manufactures and sells certain chemicals, products, and insecticides for the control of rodents and insect pests; and has contracted with various persons, firms and corporations in and around the city or town of *Waco,* for the control of such rodents and insect pests upon their premises, copies of which contract have been exhibited to Contractor;

"And, whereas, Contractor desires to do the service work in and around such city or town which may be re-quired to control such rodent and insect pests, and desires to secure Manufacturers list and to handle his products on a consignment basis;

"Now, therefore, for and in consideration of the sum of one dollar cash and other valuable considerations by each of the parties hereto to the other paid, receipt of which is hereby acknowledged and confessed; and in consideration of the mutual covenants and conditions herein contained; and in consideration of the benefits accruing to each of the parties hereto; it is agreed:

"1. Manufacturer agrees to lease to Contractor his customers list in said territory, which list shall remain the property of manufacturer, Contractor shall use his best efforts to obtain additional customers for such services, and any new customers so obtained by Contractor (or by Manufacturer) in said area shall be added to said customers list of Manufacturer and belong to Manufacturer.

"Contractor agrees to keep such customers list confidential and not to disclose same, or any part thereof, to anyone except Manufacturer and his duly authorized agent; and further agrees to return same to Manufacturer at any time on demand; and further agrees not to service or solicit any such customer of Manufacturer for a period of twelve months after the termination of this contract.

\* \* \* \* \* \*

"3. Contractor agrees that he will, at his own cost and expense, and to the best of his skill and ability, and at such times, and in such manner as Contractor may think best, service or cause to be serviced at least once a week the customers of Manufacturer in said territory in accordance with service contract issued to the customer. Contractor is an independent contractor hereunder, and may come and go as he pleases, perform the services hereunder at such hours and times as he pleases, hire and discharge and control his own help, maintain his own office, and be

responsible for the acts and conduct of anyone employed by Contractor."

Provision was made for payment to the contractor of a percentage of all monies received from the servicing of customer contracts.

The plaintiff, appellee herein, alleged that appellant Hudson began performing the contract, and continued in full performance until September 1, 1952, when he notified plaintiff that he would terminate his said contract, and further alleged that defendant Hall was engaged in the business of servicing for control of rodents and insect pests in the counties of Williamson, Bell, Coryell, McLennan and other counties in Central Texas and knew of the agreement that defendant Hudson had with plaintiff. Further allegations were made that Hudson and Hall, acting together and through defendant Bennett and other unknown persons, have been since August 31, 1952, actively engaged in soliciting plaintiffs' customers in violation of Hudson's agreement with plaintiff, and alleged that plaintiff would be damaged and that it did not have an adequate remedy at law.

The appeal is founded on ten points and are to the effect that the written contract is applicable to customers in and around Waco, and that the list provided for in the agreement was never furnished; that there was no agreement prohibiting Hudson from servicing the customers he did business with; that there was no consideration supporting the agreement and the restrictive clause is void and unreasonable, and that plaintiff had a legal remedy by suit for damages, and there is a lack of necessary parties, and defendants Hall and Bennett were not parties to the contract.

■ Since this is an appeal from an order granting a temporary injunction the prime question is did the trial court abuse its discretion in entering such order for the purpose of maintaining the status quo until the case could be tried on its merits.

The evidence is long; the statement of facts contains 244 pages.

It appears that Hudson had been working for appellee for two years prior to September 1, 1952, doing rodent and pest control service, and that the agreement provided that he would not solicit for work for a period of twelve months after he terminated his employment with appellee, or do exterminating work for the same persons he was doing work for at the time he quit.

The evidence is that soon after Hudson quit he began to solicit and to the same kind of work for his old customers and was changing the status that existed on the 1st day of September, 1952, by taking his former customers, who were customers of appellee, and inducing them to become customers of Hudson and of the competitive concern owned by Hall, and that unless restrained Hudson would secure many of such customers.

Hudson made an agreement with Hall that beginning September 1, 1952, he would do servicing work for Hall, and Hall knew that Hudson was going to try to continue servicing appellee's customers who had been serviced by him while he was appellee's contractor, and Hudson turned into Hall the list of Hudson's old customers.

It appears that some months prior to September 1, 1952, appellee employed Bennett to work for and with Hudson in Temple as Hudson's assistant and paid Bennett a salary, and that after Hudson quit he employed Bennett, and together they began soliciting and servicing Hudson's old customers.

■ We do not believe that the trial court abused his discretion in issuing the temporary injunction to preserve the status as it existed on and prior to September 1, 1952.

The order granting the injunction sets out the reasons:

"The court states the following reasons for granting this temporary injunction. It is granted for the reason that the court finds that defendant Allen E. Hudson contracted with plaintiff International Exterminator Corporation on September 15, 1950, to perform the servicing agreements thereafter made by defendant Allen E. Hudson or by said plaintiff with the persons, firms, and corporation herein-

above named and described, and said defendant Allen E. Hudson at said time agreed with plaintiff that for twelve months after ceasing to work under his said contract with plaintiff, he would not solicit for servicing and would not service any of said persons, firms and corporations, and that during said period of twelve months the names and locations of the persons, firms, and corporations with whom said servicing agreements were made should not be disclosed or made known by said defendant Allen E. Hudson to anyone except plaintiff; and for the reason that said defendant Allen E. Hudson on or prior to September 1, 1952, began violating his said agreement with plaintiff, and since September 1, 1952, he has continued to violate, and he is now violating, said agreement, and is now, in violation of his said agreement, soliciting and servicing said persons, firms, and corporations which he was servicing prior to September 1, 1952; and for the reason that defendant Allen E. Hudson and defendant C. H. Hall have an agreement or arrangement by and through which they mutually solicit and service said persons, firms, and corporations, and by which they utilize the information disclosed by said Allen E. Hudson in breach of his said agreement with plaintiff, and by which they benefit from said breach by said defendant Hudson of his said agreement with plaintiff; and for the reason that said breach by defendant Hudson of his said agreement with plaintiff is causing plaintiff irreparable damage; and for the reason that the status quo between the plaintiff and the defendants, as it existed with reference to the subject matter of this suit on September 1, 1952, should be maintained and continued until this cause can be finally tried on its merits."

■ In Southwestern Greyhound Lines v. Railroad Commission, 128 Tex. 560, 99 S.W.2d 263, at page 270, 109 A.L.R. 1235, the Supreme Court stated the rule applicable to the instant facts thus:

"* * * The granting or refusing of a temporary injunction is a matter that rests within the sound discretion of the trial court, and unless it appears from the record that the court has abused that discretion, the action of the court is not subject to review on appeal. If the petition does allege a cause of action and evidence tending to sustain such cause of action is introduced, then there is no abuse of discretion by the trial court in issuing the temporary injunction. 24 Tex.Jur., pp. 213, 214, § 253."

■ We believe that the provisions in the contract that for a period of twelve months after terminating his agreement with appellee, appellant Hudson would not service or solicit any of the customers of appellee, whom appellant Hudson was servicing at the time he quit appellee's employment, is reasonable and valid.

Blaser v. Linen Service Corporation, Tex.Civ.App., 135 S.W.2d 509 (error dism. judgmn. cor.).

The injunction order only restricts Hudson from servicing or soliciting for service any of the customers he was servicing for appellee at the time he quit for a period of twelve months thereafter.

■ We believe that the parties to the contract had the right to change, and by mutual agreement and practical construction that they did change the location from which Hudson was to do his servicing from "in and around the town of Waco" to the town of Temple.

The move to Temple by Mr. Hudson was of his own volition since he could do his work with his home in Temple as well as he could have done in Waco, and such move was agreeable with appellee. 10 Tex. Jur. p. 356.

■ We believe that the agreement was supported by adequate legal consideration and was not lacking in mutuality. 28 Am. Jur. p. 295; McAnally v. Person, Tex.Civ. App., 57 S.W.2d 945, (error dism.)

The appellants have filed a very complete and exhaustive brief, which would be very

helpful on a determination of the case after a trial on its merits.

As above stated we do not believe that it has been shown that the trial court abused his discretion in granting the temporary injunction.

The action of the trial court is affirmed.