James M. DOBSON, III, Appellant,

v.

James M. DOBSON, Jr., Appellee.

No. 17512.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Jan. 10, 1980.

Rehearing Denied Feb. 21, 1980.

Winstead, McGuire, Sechrest & Trimble, W. Mike Baggett, Dallas, for appellant.

Newton B. Schwartz, P. C., Houston, for appellee.

PEDEN, Justice.

James M. Dobson, III, the appellant, sued for an accounting and for specific enforcement of the termination provisions of a partnership agreement he had executed with his father, James M. Dobson, Jr., the appellee. The suit was consolidated with divorce proceedings between appellee and Mrs. Lois Dobson, and certain questions regarding property ownership of the three parties were referred to a master. After a jury had been empanelled, the divorce proceedings were settled, and only the partnership suit went to trial. Based on the jury's finding that appellant owned no interest in the partnership, the court entered a take-nothing judgment on appellant's claim and awarded appellee $3,000 on an unrelated counterclaim.

Appellant asserts in ten points of error his four basic arguments that the trial court erred 1) in failing to enter judgment for him based on the master's findings; 2) in submitting special issues regarding waiver of his partnership rights and entering judgment for appellee based on the answers to those issues; 3) in entering judgment based on a jury finding that appellant owned no interest in the partnership, a finding which he challenges as improperly worded and lacking support in the evidence; and 4) in refusing to grant his motion for new trial, which alleged jury misconduct in applying an erroneous definition of "waiver." Appellant prays that we reverse and render judgment declaring him to be the owner of 25% of the partnership and ordering specific enforcement of the termination provisions of the partnership agreement. In the alternative, he prays that the judgment be reversed and the case be remanded for a new trial. We affirm the judgment for $3,000; otherwise, we reverse and remand.

For some time prior to August 14, 1972, appellant and appellee had been engaged in business together. On that date they executed a written agreement forming a partnership under the name of the Dobson Company. The stated purpose of the partnership was to acquire, develop, lease, and sell real property. The agreement expressly provided that the net profits and net losses of the partnership were to be divided with 75% going to appellee and 25% to appellant. The partners were to have equal manage-

ment rights and to devote their entire time to the conduct of the business. Each agreed to work without a salary. The agreement further provided for continuation of the partnership upon the death or retirement of either partner and stated that either partner could retire from the partnership at the end of any fiscal year on written notice. The remaining partner would then have the right to purchase the retiring partner's interest or liquidate the business of the partnership.

As the parties worked together in Houston for about a year after executing the partnership agreement, their working relationship deteriorated. On two occasions appellant refused to sign notes to cover financing or construction costs on the partnership property, three mini-warehouses. In September of 1973, appellant moved to Dallas, and appellee continued the partnership business alone. Appellee consolidated several of the partnership bank accounts into one or two accounts over which appellant had no authority. Appellee obtained loans for the partnership on his own and incurred several losses for which he received no reimbursement from appellant.

From 1972 to 1976, the partnership filed tax returns showing appellant to be the owner of 25% of the properties, and appellant claimed that 25% ownership on his personal tax returns. On June 16, 1976, at appellant's request, appellee wrote a letter to a Dallas loan officer confirming that appellant owned 25% of three mini-warehouses. Appellee testified at trial, however, that he sent the letter only to help his son and that at the time he sent it he told appellant that he did not "agree with the 25%."

Finally, by letter dated August 19, 1977, appellant notified appellee that he was retiring from the partnership and offered to sell his 25% interest. Appellee's attorney notified appellant on October 3 that appellee had elected to purchase appellant's interest in accordance with the retirement provisions of the partnership agreement, but the purchase was never concluded.

In response to special issues, the jury made these findings:

1. The parties entered into a partnership agreement on Aug. 14, 1972.

2. The percentage of the partnership now owned by J. Dobson, Jr., is 100% and by J. Dobson, III, is 0%.

3. J. Dobson, III, elected to retire from the partnership.

4. J. Dobson, Jr., elected to buy the interest of J. Dobson, III, in the partnership.

5. The jury did not find that J. Dobson, Jr., failed to devote his entire time to the partnership during 1972 and 1973.

6. The jury did not find that J. Dobson, Jr., refused to allow J. Dobson, III, to participate equally in management of the partnership in 1972 and 1973.

7. Properties acquired by the partnership after 1/1/72, while both parties were partners, included:
   Beaumont mini-warehouse
   Pasadena mini-warehouse
   Austin mini-warehouse
   Clay Road property

8. After 1/1/72, J. Dobson, III, refused to co-sign promissory notes representing obligations necessarily incurred in the operation of the mini-warehouse businesses.

9. On and after 1/1/72, J. Dobson, III, failed to pay his share of any partnership losses necessarily incurred in operation of the warehouse business.

10. The jury did not find that on and after 1/1/72, J. Dobson, III, failed to devote any of his time to the business.

11. On or about 12/29/75, J. Dobson, III, executed a $3,000 note to J. Dobson, Jr.

12. No part of the note has been paid.

13. The present market values of the properties are: Pasadena $148,000; Beaumont $224,000; Austin $225,000.

14. $100,000 would fairly compensate J. Dobson, Jr., for services he rendered from 1/1/74 to date in managing the 3 mini-warehouses.

15. He has been paid for the services rendered.

16. J. Dobson, III, waived his rights under the agreement by failure to pay 25% of the losses and by his inability or refusal to co-sign partnership obligations necessarily incurred in operation of the partnership. The jury did not find that he waived his rights by failing to devote any time to the business.

■ In his first point of error, appellant asserts that the trial court erred in refusing to enter a judgment in his favor based upon the findings of the master that appellant owned an undivided 25% interest in the partnership property. He contends that the master's findings were binding on the trial court because appellee failed to make proper and timely objection to either the findings themselves or the initial order to proceed before the master.

Rule 171, Tex.R.Civ.Proc., authorizes appointment of a master "in exceptional cases, for good cause" and authorizes the trial court to "confirm, modify, correct, reject, reverse or recommit the report." In our case, there is nothing to reflect that the trial judge adopted or confirmed the master's findings. The master's report was filed in the trial court on January 25, 1979, and the defendant-appellee filed objections and exceptions to it the next day. The trial court's docket sheet reflects that he had paid a jury fee on October 13, 1978. The trial judge did not err in submitting to a jury the issues raised by the exceptions. 49 Tex.Jur.2d 593, References § 16. The appellant's first point is overruled.

In his second and third points of error, appellant claims that because his partnership rights could not be waived as a matter of law, the trial court erred first in submitting the waiver question to the jury and then in entering judgment for appellee based on the jury's findings that a waiver had occurred. It is apparently not his position that as a matter of law no partnership rights can ever be waived under any circumstances, but rather that under the facts in our case his interest in the assets of the partnership could not have been waived as a matter of law.

The appellee's contention is that the trial court was correct in basing its judgment on the jury finding of waiver (Special Issue 16) and, in addition, on the appellant's alleged abandonment of the business.

■ To determine whether there could have been a waiver, we look first to the partnership agreement. As interpreted under the law of contracts, it governs the rights of the partners; only where it is silent do the provisions of the Texas Uniform Partnership Act, Art. 6132b, come into play. *Park Cities Corporation v. Byrd,* 534 S.W.2d 668 (Tex.1976).

The agreement provides that either party may retire from the partnership, but it contains no provisions for forfeiture or waiver and is silent as to the effect of a breach of its terms. Hence, the decision in *McElreath v. Riquelmy,* 444 S.W.2d 853 (Tex.Civ.App. 1969, no writ), a case relied on by appellee, is not controlling since that case involved a clear contractual provision for forfeiture.

■ Generally, unless the consideration in a contract is expressed in terms which unmistakably demand a forfeiture for nonperformance, a mere breach of such terms will not authorize the cancellation of the contract. *Henshaw v. Texas Natural Resources Foundation,* 147 Tex. 436, 216 S.W.2d 566, 571 (1949); 17 Am.Jur.2d, Contracts §§ 499–500. As was pointed out in *Ogilvie v. Hill,* 563 S.W.2d 846, 849 (Tex. Civ.App.1978, writ ref. n. r. e.), "[c]onditions which may result in forfeitures or in the termination of contracts are not favored by the law and will not be decreed unless the contract contains clear and specific provisions to that effect. *Hearne v. Bradshaw,* 158 Tex. 453, 312 S.W.2d 948 (1958)." The partnership agreement lacked such provisions and cannot be the source of the claimed waiver.

■ The Texas Uniform Partnership Act does not provide that waiver or forfeiture of rights will result from a breach of the agreement. Section 18 of the Act sets forth

the rights and duties of the partners but does not indicate the effect of failure to perform one's obligations. Sections 24 through 26 describe the nature and extent of property rights in the partnership, and Sections 29 through 43 provide for dissolution and winding up of a partnership. None of these sections, however, prescribes forfeiture of a partner's rights for breach of the agreement, even if such breach is a direct cause of dissolution.

█ Subject to certain narrow exceptions, the general rule is that breach of a partnership agreement does not lead to loss of a partner's interest:

Since the law does not favor forfeitures, it does not treat the failure of a partner to pay his share of the capital of the firm or of its expenses or debts, or to devote all his time to the firm business . . . as a cause for forfeiting his interest in the firm property. Under an agreement providing for the cessation of the interest of a partner on his failure to perform his duties or the other stipulations, the other partner cannot, without appeal to a court, eject him from the partnership or declare his interest forfeited on the ground of such alleged failure. However, where the partnership agreement provides for the forfeiture of his interest in the firm property by a partner who withdraws within a stated period, such a provision will be enforced. 68 C.J.S. 527, Partnership § 86.

Breaches of the partnership articles, whether or not committed in bad faith, do not cause a partner to lose his rights to share in the profits. But a partner who refuses to contribute funds essential to the operation of a partnership business may be excluded from participation in profit. And if one of the partners abandons the business, he may forfeit some or all of his share of the profits. 60 Am. Jur.2d 39, Partnership § 111.

Of the relevant cases from other jurisdictions, we have found only two that have declared a forfeiture, *Saletic v. Stamnes,* 51 Wash.2d 696, 321 P.2d 547 (1958), and *Middleton v. Newport,* 6 Cal.2d 57, 56 P.2d 508 (1936). In each of these cases the court found that one party had within a short time completely abandoned his efforts and made no active claim of an interest.

*Saletic* and *Middleton* are of little use in deciding the present case. Both were decided without reference to the Uniform Partnership Act, and in our case appellant's participation in the partnership falls nowhere near the low level which the courts in these cases held to constitute abandonment. The jury in our case declined to find that the appellant failed to devote any time to the business after January 1, 1972. It also declined to find that he had waived his rights by failing to devote any time to the business.

More to the point are cases which involve breaches of partnership agreements and interpret the Uniform Partnership Act. In *B. K. K. Company v. Schultz,* 7 Cal.App.3d 786, 797, 86 Cal.Rptr. 760, 767 (1970), the court held that "a breach of the partnership agreement does not necessarily result in a forfeiture of the partner's interest or deprive him of his right to an accounting. When a partner wrongfully withdraws he is entitled to the value of his interest, less the damages caused by him."

Similarly, in *Fisher v. Fisher,* 352 Mass. 592, 227 N.E.2d 334 (1967), the Massachusetts Supreme Judicial Court reaffirmed its earlier holding in *Walsh v. Atlantic Research Associates, Inc.,* 321 Mass. 57, 71 N.E.2d 580 (1947), stating, "A partner does not lose his rights in the accrued profits of a firm by reason of breaches of the partnership articles, whether or not committed in bad faith, although of course he will be subject to charges for all unexcused breaches in the final accounting." (emphasis omitted). See also *Stolp v. Reiter,* 190 Minn. 382, 251 N.W. 903 (1922); *Schnitzer v. Josephthal,* 122 Misc. 15, 202 N.Y.S. 77 (1923).

Although we have found no Texas cases deciding whether a partner can forfeit or waive his interest if he breaches the partnership agreement, reasoning and dicta in several cases involving joint ventures lend support to the conclusion that under these

circumstances in our case he cannot. See, e. g., *Thompson v. Duncan,* 44 S.W.2d 904 (Tex.Com.App.1932); *Lane v. Phillips,* 509 S.W.2d 894 (Tex.Civ.App.1974, writ ref. n. r. e.); *Welch v. Brock,* 195 S.W.2d 940 (Tex. Civ.App.1946, writ ref. n. r. e.).

The general rule is that, in the absence of explicit provisions in the agreement to the contrary, a breach of the partnership articles will not ordinarily cause a partner to lose his interest in the partnership. Applying that rule to the jury findings in our case, (with the exception of the finding that a waiver had occurred) we conclude that the trial court erred in submitting the issue of waiver to the jury and in refusing to disregard the answer given in response to that issue. We hold that the appellant's conduct was insufficient as a matter of law to give rise to a waiver of his rights or a forfeiture of his interest. Appellant's second and third points of error are sustained.

In his points of error four, five, and six, appellant argues that the trial court erred in submitting the waiver issue to the jury and in subsequently entering judgment based upon that issue because, even assuming the rights could be waived, there was no evidence or insufficient evidence to support a finding of waiver in this case. We agree, but in view of the conclusions just expressed, we feel that little further discussion of this point is necessary.

The accepted definition of a waiver is that it is "an *intentional* relinquishment of a known right or *intentional* conduct inconsistent with claiming it." (emphasis supplied). *Massachusetts Bonding and Insurance Co. v. Orkin Exterminating Company, Inc.,* 416 S.W.2d 396, 401 (Tex.1967). See also 60 Tex.Jur.2d, Waiver §§ 1, 9. Even looking at all of the evidence in the light most favorable to appellee, there is no basis to believe that appellant intentionally relinquished his interest in the partnership. Moreover, although his actions in ceasing to participate actively in the business and in refusing to incur obligations on its behalf may have been breaches of the agreement, they were not necessarily inconsistent with

appellant's claim of a 25% interest in the business.

Points of error four, five, and six are sustained.

In his points of error seven, eight, and nine, appellant complains of the submission of the second special issue inquiring into the percentage ownership of the partnership; he argues that even if the submission of the issue was proper, it was error to enter judgment based on the jury's finding since there was no evidence or, alternatively, insufficient evidence to support the finding. He also objects to the special issue on the ground that it contains a question of law which is for the court to resolve. Appellee now concedes that the finding should be disregarded.

The trial court's judgment is affirmed as to the appellee's recovery of $3,000; it is otherwise reversed and remanded with directions to enter judgment that appellant has a 25% interest in the partnership, to order an accounting by appellee, to determine the amount of the charges, if any, against the appellant for any unexcused breaches of the agreement, and to proceed to termination of the partnership in accordance with paragraph 11 of the agreement.

EVANS and WARREN, JJ., participated.