COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-061-CV

GREGORY A. BIRD AND APPELLANTS

MICHAEL G. RADLER 

V.

LUBRICANTS, USA, LP., APPELLEES

LUBRICANTS MANAGEMENT GROUP, LP., 

APL MANAGEMENT, LLC., 

CHRIS HAIRE, AND 

ROBERT BLAKE SHAW

------------

FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Gregory A. Bird and Michael G. Radler (collectively, appellants) appeal the trial court’s judgment dismissing appellants’ claims against Lubricants USA, LP., Lubricants Management Group, LP., APL Management, LLC., Chris Haire, and Robert Blake Shaw (collectively, appellees) for lack of standing.  In three issues, appellants complain that the trial court erred by granting the plea to the jurisdiction based on lack of standing.  We reverse and render.

II.  Background Facts and Procedural History

Lubricants USA, LP. (LUSA) is a Texas limited partnership that owns and operates a lubricant business.  LUSA was created by an Agreement of Limited Partnership (the Partnership Agreement) executed in August 2000.  LUSA’s general partner is APL Management, LLC. (APL), a Texas limited liability company.  LUSA’s limited partners are composed of two groups: the Management Group and the Investor Group.  The Management Group initially represented the limited partnership interest owned by Lubricants Management Group, LLC., a Texas limited liability company whose members were Haire and Shaw.  The investor group was comprised of limited partners Milt McKenzie, Michael Allen, and JPC, LLC.  JPC is an Oklahoma limited liability company owned by appellants.

In conjunction with the execution of the Partnership Agreement, the parties also entered into a Voting Agreement concerning the election of managers of APL, LUSA’s general partner.  Under the Voting Agreement, the Management Group was entitled to elect two persons to act as managers for APL, and the Investor Group was entitled to elect one person to act as a manager of APL.  The Voting Agreement also allowed the Investor Group to call a special meeting and select an additional manager if LUSA failed to generate positive cash flow for any period of four consecutive months. 

In the fall of 2003, McKenzie and Allen sold their limited partnership interests back to LUSA.  After LUSA bought back McKenzie’s and Allen’s limited partnership interests, Haire and Shaw proposed changes to the Partnership Agreement.  Appellants considered the proposed changes to be substantial in nature and adverse to their interests and did not consent to them. 

LUSA also wanted to buy out the remaining Investor Group limited partnership interests held by appellants through JPC; however, appellants decided to retain their interests.  On December 17, 2003, JPC assigned one-half of its limited partnership interest in LUSA to Bird and one-half to Radler, effective January 1, 2003.  On February 2, 2004, JPC also assigned one-half of its membership interest in APL to Bird and one-half to Radler.

On or about March 2, 2004, at Haire’s request, appellants each signed Assumption Agreements regarding the interests obtained from JPC and became substitute limited partners of LUSA and substitute members of APL.  Like the assignments from JPC, the Assumption Agreements were dated to be effective January 1, 2003.  After these changes, JPC retained no right, title, or interest in LUSA or APL; thus, appellees were the only limited partners comprising the Investor Group.  Further, as provided by the Partnership Agreement, first Radler, and later Bird, served as the Investor Group’s designated manager of APL.

Meanwhile, in December 2003, Bird and his wife created the Gregory A. and Laura E. Bird Foundation, and Radler created the Radler Family Foundation.  On December 17, 2003, appellants executed assignments of their limited partnership interests in LUSA to their respective Foundations (the Assignments).
(footnote: 2)  In addition, on December 23, 2003, appellants executed Trust Indentures regarding their assigned partnership interests so that the Foundations would qualify as tax-exempt charitable supporting organizations under sections 501(c)(3) and 509(a)(3) of the Internal Revenue Code. 

The parties disagree regarding the scope and effect of the Assignments.  Appellants contend that the Assignments were made subject to the Partnership Agreement; therefore, until the Foundations became substitute limited partners of LUSA, they received only the economic benefits of appellants’ partnership interests and appellants retained their limited partner rights in LUSA.  Appellees, on the other hand, argue that appellants transferred their entire partnership interests in LUSA to the Foundations via the Assignments and, as a result, have lost their limited partner statuses.

LUSA, through Haire, was notified of the Assignments on December 23, 2003.  Although appellants eventually gave written consent to the assignment of appellants’ partnership interests to the Foundations effective December 17, 2003, on January 23, 2004, Haire notified appellants that LUSA refused to recognize the Foundations as substitute limited partners.
(footnote: 3)
 In December 2004, appellants sued appellees, alleging claims for breaches of fiduciary duty, minority oppression, misappropriation of partnership assets, conspiracy, declaratory relief, breach of the partnership agreement, and receivership.  Appellees filed a plea to the jurisdiction, asserting that appellants lacked standing to sue because they had transferred their partnership interests in LUSA to the Foundations.  After a three-day hearing, on January 6, 2006, the trial court granted the plea to the jurisdiction and dismissed all of appellants’ claims against appellees.  On February 17, 2006, the trial court severed appellants’ claims into a separate proceeding so that the dismissal order would become final and appealable.  This appeal followed.

III. Appellees’ Motion to Dismiss

Before considering the merits of appellants’ complaints on appeal, we must determine our jurisdiction over the case.  Appellees have moved to dismiss the appeal for want of jurisdiction.  They contend that the trial court improperly severed appellants’ claims after dismissing them based on appellants’ lack of standing; therefore, the trial court’s judgment is interlocutory and unappealable.  We disagree.

The trial court’s order dismissing appellants’ claims for lack of standing, coupled with the court’s order severing appellants’ claims into a separately styled and numbered suit, operate as a final judgment with regard to appellants’ claims.
(footnote: 4)  Appellees seek to alter the trial court’s final judgment by reversing the severance order portion of the judgment.  A party who seeks to alter a trial court’s judgment must file a notice of appeal.
(footnote: 5) Appellees did not file a notice of appeal; therefore, they did not perfect an appeal from the trial court’s judgment,
(footnote: 6) and they may not seek to alter it by challenging the severance order in a motion to dismiss.
(footnote: 7)
 Further, even assuming, for argument’s sake, that the severance order was improper, the alleged error does not deprive us of jurisdiction over the appeal.  “[A] judgment which possesses all of the attributes of finality can[not] be regarded as interlocutory merely because the court may have erred in ordering a severance which it had the power to grant.”
(footnote: 8)  Accordingly, we hold that we have jurisdiction over the appeal, and we deny appellees’ motion to dismiss.

IV. Plea to the Jurisdiction

We now turn to appellants’ complaints on appeal.  In three issues, appellants complain that the trial court erred by granting appellees’ plea to the jurisdiction and dismissing appellants’ claims for lack of standing.  Appellants argue that the trial court misconstrued the effect of their Assignments to the Foundations under the Partnership Agreement, the Texas Revised Limited Partnership Act, and the Assignments themselves and improperly concluded that, as a result of the Assignments, appellants are no longer limited partners under the Partnership Agreement.  

A. Standing to Sue

A plaintiff must have standing to bring a lawsuit.
(footnote: 9) The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit to have a justiciable interest in its outcome.
(footnote: 10)  A plaintiff has standing when he is personally aggrieved, regardless of whether he is acting with legal authority.
(footnote: 11)  Thus, in Texas, the test for standing requires that there be (1) a real controversy between the parties (2) that will be actually determined by the judicial declaration sought.
(footnote: 12)  Standing is a component of subject matter jurisdiction over a case;
(footnote: 13) therefore, we apply a de novo standard of review to the trial court’s determination regarding standing.
(footnote: 14)  If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do.
(footnote: 15)  In this case, the relevant evidence is the Partnership Agreement and the Assignments.

B. Construction of Partnership Agreement and Assignments

When, as here, the relationship among partners is governed by a written partnership agreement, the agreement governs the rights of the parties.
(footnote: 16)  We construe both the Partnership Agreement and the Assignments under the law of contracts.
(footnote: 17)  When a contract is unambiguous,
(footnote: 18) we construe it as a matter of law.
(footnote: 19)  We give effect to the parties’ intentions as expressed in the writing alone because it is objective, not subjective, intent that controls.
(footnote: 20)  We give terms their plain, ordinary, and generally accepted meaning,
(footnote: 21) and we examine and consider the entire writing in an effort to harmonize and give effect to all its provisions so that none will be rendered meaningless.
(footnote: 22)  Further, if the partnership agreement is silent on a matter, we look to the Texas Revised Limited Partnership Act (the Act) for guidance.
(footnote: 23)
 Here, the Assignments provide in pertinent part as follows:

WHEREAS, Assignor [appellants] desires to assign to Assignee [the Foundations] . . . Assignor’s limited partnership interest in the Partnership, subject to the terms and provisions hereof . . . .

NOW, THEREFORE, . . . .

1.  
Assignment of Limited Partnership Interest.
  Assignor hereby agrees to transfer, assign and convey to Assignee 
an undivided
 [percentage] 
limited partnership interest in the Partnership
 owned by Assignor (the “Assigned Interest”), which Assigned Interest is 
subject to the terms and conditions of the Partnership Agreement.
  Assignor represents and warrants that 
this Assignment is an absolute and complete assignment of the Assigned Interest
 and that there are no outstanding liens, claims or encumbrances affecting the Assigned Interest or Assignor’s ability to sell, transfer, convey and assign to Assignee the Assigned Interest, 
except as provided in the Partnership Agreement. 
 Assignee acknowledges that the Assigned Interest conveyed to Assignee hereunder does not constitute Assignor’s [sic] admission as a limited partner of the Partnership unless and until such time as Assignee is admitted as a limited partner in accordance with the terms of Article 8 of the Partnership Agreement.  
Until such time as Assignee is approved as a substitute limited partner under the Agreement, Assignee shall have all the rights of an assignee of a limited partnership interest,
 including the right to share in the income and losses of the Partnership and to be treated as the owner of a limited partnership interest for federal income tax purposes, 
but shall not have any rights as a limited partner under this Agreement.
  [Emphasis supplied.]
(footnote: 24) 

The Partnership Agreement provides that a “Partnership Interest” is “the entire ownership interest of a Partner in the Partnership at any particular time, including the rights and obligations of the Partner under this Agreement and the Act.”  Part or all of this interest may be assigned.
(footnote: 25)  Unless the assignee is an “Affiliate”
(footnote: 26) of the assigning limited partner, however, article 8.5 of the Partnership Agreement provides the assignee cannot become a substitute limited partner unless (1) the assignee is approved by the partners as a substitute limited partner and (2) the assignee satisfies four additional requirements, including providing documentation of the transfer and signing an assumption agreement.
(footnote: 27)  If the Assignee is an Affiliate, the partners’ approval is not required, but the assignee still must satisfy the four additional requirements to be admitted as a substitute limited partner.
(footnote: 28)  Although the parties disagree regarding whether the Foundations are appellants’ “Affiliates,”
(footnote: 29) they agree that the Foundations never became substitute limited partners because they did not fulfill the conditions in article 8.5(a)–(d). 

The Partnership Agreement and the Assignments contain identical provisions expressly providing that an assignee has no limited partner rights unless and until it becomes a substitute limited partner.
(footnote: 30)  Consequently, pursuant to both the Partnership Agreement and the Assignments, the Foundations have only the rights of an assignee of a limited partnership interest and, in the language of these documents, “shall not have any rights as a Limited Partner.”
(footnote: 31)
 Because the Foundations do not have any limited partner rights as a result of the Assignments, we must determine whether (1) appellants have retained their limited partner rights and may continue to exercise them, as they contend, or (2) appellants have lost their limited partner rights even though the Foundations cannot exercise those rights, as appellees contend.  Although the Partnership Agreement clearly spells out the effect of an assignee’s failure to become a substitute limited partner on the interests and rights of the 
assignee,
 the Partnership Agreement is silent regarding the effect of this failure on the rights of the limited partner.
(footnote: 32)  Further, the Partnership Agreement is silent concerning whether the assignor must expressly reserve limited partner rights until the assignee has been substituted as a limited partner or run the risk of losing them.  Therefore, we turn to the Act for guidance.
(footnote: 33)
 Section 7.02(a)(4) of the Act provides, “until the assignee becomes a partner, the assignor partner continues to be a partner and to have the power to exercise any rights or powers of a partner, except to the extent those rights and powers are assigned . . . .”
(footnote: 34)  Regarding this provision, the State Bar Committee comment explains, “Section 7.02(a)(4) leaves in the assignor all unassigned rights until the assignee becomes a partner, unless the agreement is otherwise.”
(footnote: 35)  The purpose of this provision is to assure that there will always be at least one person who can exercise limited partner rights.
(footnote: 36)
 In this case, appellants assigned their “undivided,” “absolute and complete” limited partnership interests to the Foundations, but they did so “subject to the terms and conditions of the Partnership Agreement” and “except as provided in the Partnership Agreement.”  The phrase “subject to” is a term of limitation.
(footnote: 37)  “There is nothing in the use of the words ‘subject to,’ in their ordinary use, which would even hint at the creation of affirmative rights.”
(footnote: 38) Likewise, the purpose of an exception “is to take something out of the contract which would otherwise have been included in it.”
(footnote: 39)  Thus, appellants’ assignment of their limited partner rights in LUSA to the Foundations was made “subject to” the Foundations’ becoming substitute limited partners—an event that has not yet occurred.  Accordingly, construing the provisions in the Assignments and the Partnership Agreement as a whole so that none is rendered meaningless,
(footnote: 40) we hold that the appellants’ assignment of their limited partner interests in LUSA caused their economic interests in the partnership to pass to the Foundations;
(footnote: 41) but the transfer of their limited partner rights in LUSA is “subject to” the fulfillment of the conditions set out in article 8.5 of the Partnership Agreement and will not be effective unless and until the Foundations become substitute limited partners thereunder.
(footnote: 42)  Until the occurrence of this triggering event, under section 7.02(a)(4) of the Act, appellants continue to be limited partners in LUSA and to have the power to exercise their limited partner rights.
(footnote: 43)
V. Conclusion

For these reasons, we hold that the trial court erred by granting appellees’ plea to the jurisdiction and dismissing appellants’ claims based on lack of standing.  Accordingly, we sustain appellants’ issues, reverse the trial court’s judgment granting appellees’ plea to the jurisdiction, and render judgment denying the plea. 

JOHN CAYCE

CHIEF JUSTICE

PANEL A:  CAYCE, C.J.; LIVINGSTON and MCCOY, JJ.

DELIVERED:  August 31, 2007

FOOTNOTES
1:
Tex. R. App. P.
 47.4

2:
This is the same date that JPC assigned its interests in LUSA and APL to appellants, effective January 1, 2003.

3:
Appellees contend that, after Haire refused to accept the Foundations as substitute limited partners, appellants proceeded with the Assignments “unbeknownst” to appellees.  This allegation is irrelevant to our review because appellees do not contend that appellants’ alleged surreptitious conduct rendered the Assignments ineffective.  To the contrary, appellees acknowledge that they expressly consented to the Foundations as assignees of appellants’ limited partnership interests in LUSA—
after
 appellees allegedly discovered the “full nature” of the transfers.

4:
Ins. Co. of State of Pa. v. Orosco,
 170 S.W.3d 129, 135 (Tex. App.—San Antonio 2005, no pet.); 
Aviation Composite Techs., Inc. v. CLB Corp.,
 131 S.W.3d 181,187 n.5 (Tex. App.—Fort Worth 2004, no pet.); 
see Brown v. Todd,
 53 S.W.3d 297, 300 (Tex. 2001) (“After the trial court dismissed [appellant’s] claim for lack of standing, he could have sought a severance so that the dismissal against him would have been an appealable final judgment.”).  Appellees’ counter-claims against appellants remain pending in the original cause number.

5:
Tex. R. App. P.
 25.1(c); 
Lubbock County, Tex. v. Trammel’s Lubbock Bail Bonds,
 80 S.W.3d 580, 584 (Tex. 2002).

6:
See
 
Tex. R. App. P.
 25.1(a) (providing that “[a]n appeal is perfected when a written notice of appeal is filed”).

7:
See, e.g.,
 
Lubbock County, Tex.,
 80 S.W.3d at 584 (holding that the county could not seek to alter the trial court’s partial summary judgment because the county did not file a notice of appeal); 
Boulle v. Boulle,
 160 S.W.3d 167, 176 (Tex. App.—Dallas 2005, pet. denied) (holding that appellee had waived his complaint that the trial court had improperly denied his motion to disqualify an attorney because appellee had not filed a notice of appeal); 
Gore v. Scotland Golf, Inc.,
 136 S.W.3d 26, 34 (Tex. App.—San Antonio 2003, pet. denied) (holding that the appellate court could not consider appellee’s complaint that the trial court erred by overruling appellee’s motion for partial JNOV because appellee had not filed a notice of appeal); 
see also City of Houston v. Am. Resources, Inc.,
 No. 01-99-01377-CV, 2002 WL 31941517, at *2 (Tex. App.—Houston [1st Dist.] Dec. 27, 2002, no pet.) (holding that, because notice of appeal was untimely, court of appeals had no jurisdiction to correct any error in severance order).

8:
Pierce v. Reynolds,
 160 Tex. 198, 329 S.W.2d 76, 79 n.1 (1959); 
see Schieffer v. Patterson,
 433 S.W.2d 418, 419 (Tex. 1968) (following 
Pierce
); 
see also Rucker v. Bank One Tex., N.A.,
 36 S.W.3d 649, 652 (Tex. App.—Waco 2000, pet. denied); 
Nicor Expl. v. Fla. Gas Transmission Co.,
 911 S.W.2d 479, 482 (Tex. App.—Corpus Christi 1995, writ denied); 
Rutherford v. Whataburger, Inc.,
 601 S.W.2d 441, 443 (Tex. Civ. App.—Dallas 1980, writ ref’d n.r.e.) (all holding that a trial court’s error in granting a severance does not divest the court of appeals of jurisdiction over the appeal).  
But cf.
 
Dalisa, Inc. v. Bradford,
 81 S.W.3d 876, 882 (Tex. App.—Austin 2002, no pet.) (dismissing properly perfected appeal for want of jurisdiction after concluding that trial court’s judgment was not final because severance order was improper); 
Cass v. Stephens,
 823 S.W.2d 731, 734 (Tex. App.—El Paso 1992, no writ) (same), 
overruled on other grounds by In re Hoover, Bax & Slovacek, L.L.P.,
 6 S.W.3d 646 (Tex. App.—El Paso 1999, orig. proceeding). 

9:
Coastal Liquids Transp., L.P. v. Harris County Appraisal Dist.,
 46 S.W.3d 880, 884 (Tex. 2001); 
Antonov v. Walters,
 168 S.W.3d 901, 904 (Tex. App.—Fort Worth 2005, pet. denied).

10:
Austin Nursing Ctr., Inc. v. Lovato,
 171 S.W.3d 845, 848 (Tex. 2005).

11:
Nootsie, Ltd. v. Williamson County Appraisal Dist.,
 925 S.W.2d 659, 661 (Tex. 1996).

12:
Id.
 at 662.

13:
City of Arlington v. Scalf,
 117 S.W.3d 345, 347 (Tex. App.—Fort Worth 2003, pet. denied).

14:
Antonov,
 168 S.W.3d at 904
.

15:
Tex. Dep’t of Parks & Wildlife v. Miranda,
 133 S.W.3d 217, 227 (Tex. 2004).

16:
Tex. Rev. Civ. Stat. Ann.
 art. 6132a-1, § 7.02 (Vernon Supp. 2006); 
Hoagland v. Finholt,
 773 S.W.2d 740, 742 n.4 (Tex. App.—Dallas 1989, no writ).

17:
Park Cities Corp. v. Byrd,
 534 S.W.2d 668, 672 (Tex. 1976); 
Dobson v. Dobson,
 594 S.W.2d 177, 180 (Tex. Civ. App.—Houston [1st Dist.] 1980, writ ref’d n.r.e.).

18:
None of the parties contend that the provisions in the Partnership Agreement and Assignments at issue in this case are ambiguous. To the contrary, appellees contend that the documents are “clear and unambiguous.” 

19:
City of Pinehurst v. Spooner Add’n Water Co.,
 432 S.W.2d 515, 518 (Tex. 1968); 
Praeger v. Wilson,
 721 S.W.2d 597, 600-01 (Tex. App.—Fort Worth 1986, writ ref’d n.r.e.).

20:
City of Pinehurst,
 432 S.W.2d at 518.

21:
Kelley-Coppedge, Inc. v. Highlands Ins. Co.,
 980 S.W.2d 462, 464 (Tex. 1998).

22:
J.M. Davidson, Inc. v. Webster,
 128 S.W.3d 223, 229 (Tex. 2003);
 Coker v. Coker,
 650 S.W.2d 391, 393 (Tex. 1983); 
R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.,
 596 S.W.2d 517, 519 (Tex. 1980).

23:
Park Cities Corp.,
 534 S.W.2d at 672; 
McLendon v. McLendon,
 862 S.W.2d 662, 676 (Tex. App.—Dallas 1993, writ denied); 
Hoagland,
 773 S.W.2d at 742 n.4.

24:
Likewise, the Trust Indentures provide that appellants, as grantors, assigned to the Trustees of the Foundations all their “right, title and interest in and to the property described in the attached Schedule ‘A’”—appellants’ “Units of [LUSA]”—but Schedule A specifically references the Assignments.  Thus, the scope of the interests and rights conveyed to the Foundations by the Trust Indentures is governed by the Assignments and the Partnership Agreement.  
See Jones v. Kelley,
 614 S.W.2d 95, 98 (Tex. 1981) (“The general rule is that separate instruments or contracts executed at the same time, for the same purpose, and in the course of the same transaction are to be considered as one instrument, and are to be read and construed together.”); 
Wasaff v. Lipscomb,
 713 S.W.2d 730, 732 (Tex. App.—Houston [14th Dist.] 1986, no writ) (same); 
see also In re Waggoner Estate,
 163 S.W.3d 161, 168 (Tex. App.—Amarillo 2005, no pet.) (rejecting a construction that did not harmonize partnership documents, but unnecessarily brought them into conflict).

25:
Specifically, article 8.1 of the Partnership Agreement provides as follows:

Restriction Against Transfer
.  No Partner may . . . assign . . . 
all or any portion
 of his or its Partnership Interest without the prior written consent of all other Partners, except as provided in this Agreement.  [Emphasis supplied.] 

Similarly, section 7.02(a)(1) of the Act provides that “a partnership interest is assignable in whole or in part.”  
Tex. Rev. Civ. Stat. Ann.
 art. 6132a-1, § 7.02(a)(1).  This provision “contemplates that economic (profit allocation and distribution) rights can be assigned without voting rights, but not vice versa.”  
Id.
 cmt.  Appellees consented to the Foundations as assignees of appellants’ limited partnership interests in LUSA (but not as substitute limited partners) effective December 17, 2003, the date the Assignments were made.

26:
An “Affiliate” includes a partner’s spouse or immediate family member or a person “directly or indirectly controlling, controlled by or under common control with the Partner.” 

27:
Specifically, article 8.5 of the Partnership Agreement provides as follows:

Substitute and Additional Limited Partners
.  Should there occur a transfer of all or part of a Partnership Interest pursuant to the terms and conditions of this 
Article 8
, the transferee of the Partnership Interest shall become a substitute Limited Partner only if Approved by the Partners, which approval may be withheld for any or no reason.  Until such time as the transferee is approved as a substitute Limited Partner, such transferee shall be considered an assignee of a limited partnership interest for the purpose of this Agreement and such transferee shall have all the rights of an assignee of a limited partnership interest, including the right to share in the income and losses of the Partnership and to be treated as the owner of a limited partnership interest for federal income tax purposes, but shall not have any rights as a Limited Partner under this Agreement.  In addition to receiving the Approval of the Partners, a transferee of all or part of a Partnership Interest must satisfy the following requirements prior to becoming admitted as a Limited Partner of the Partnership:

(a) the transferor and transferee provide written evidence of the transfer or assignment acceptable to the Partners;

(b) the transferee has executed an instrument reasonably satisfactory to the General Partner accepting and adopting the terms and provisions of this Agreement and agreeing to be bound by the terms and conditions hereof and expressly assuming the liability of the transferor . . . ;

(c) the transferee has paid or caused to be paid any reasonable expenses of the Partnership incurred in connection with the admission of the transferee as an additional or substitute Limited Partner; and

(d) at the election of the General Partner, the Partnership receives an opinion of counsel for the Partnership that such assignment would not result in the termination of the Partnership for federal income tax purposes or produce any adverse income tax consequence to the Partners, and that registration under the Securities Act of 1933 is not required in connection with such transfer.

28:
Specifically, article 8.4 provides as follows:

Transfer of Partnership Interests to Affiliates
.  Notwithstanding any provision contained herein to the contrary, any Limited Partner may, during the term of this Agreement, transfer all or a portion of her, his or its Partnership Interest to any Affiliate of such Limited Partner, and such transferee shall be admitted as . . . [a] substitute Limited Partners [sic] upon compliance with the terms of 
Section 8.4
 [sic—read 8.5] hereof.  No Approval of the Partners shall be required in order to effect such transfer and substitution, notwithstanding the provisions of Article 8 to the contrary.

Although this article refers to complying with the terms of article 8.4, the parties agree that compliance with article 8.5(a)–(d) is actually required.

29:
Appellants contend that the Foundations are Affiliates; appellees contend that they are not. 

30:
Compare
 article 8.5 of the Partnership Agreement, 
supra
 n.27, 
with
 section 1 of the Assignments.

31:
See 
Tex. Rev. Civ. Stat. Ann.
 art. 6132a-1, § 3.01(b) (Vernon Supp. 2006) (providing that a person acquiring a partnership interest from a limited partner becomes a new limited partner upon compliance with the provisions of the partnership agreement governing the admission of new limited partners or, in the absence of such provisions, on the written consent of all partners); 
id.
 § 7.02(a)(2) (providing that, unless the partnership agreement provides otherwise, the assignment of a partnership interest does not entitle the assignee to exercise the rights and powers of a partner); 
In re Wilmot,
 665 N.Y.S.2d 783, 784 (N.Y. App. Div. 1997) (holding that the assignee of a limited partnership interest who had not been accepted as a substitute limited partner acquired only the assignor’s right to receive distributions and allocations of profits and losses from the partnership).

32:
In contrast, the Partnership Agreement is not silent concerning the effect of an involuntary transfer due to bankruptcy, death, divorce, or incompetence on limited partner rights.  In those situations, the economic benefits of the limited partnership interest pass to the transferee, but the limited partner rights can no longer be exercised.  Specifically, article 5.3 of the Partnership Agreement provides as follows:

Bankruptcy; Death or Divorce
.  The Bankruptcy, death, divorce . . . or declaration of incompetence of a Limited Partner shall not cause a dissolution of the Partnership, but 
the rights of the Limited Partner to share in the profits and losses of the Partnership and to receive distributions of Partnership funds shall
, upon the occurrence of any of these events, unless otherwise provided for herein, 
pass on to the Limited Partner’s estate, legal representative, former spouse, or successors in interest, as the case may be
, and the Partnership shall continue as a limited partnership. . . .  
In no event
 shall the estate, representative, former spouse or successors in interest become a Limited Partner of the Partnership, nor 
be construed as a substituted limited partner, as that term is used in the Act, nor shall such persons or entities have any rights as a Limited Partner or any rights relative to the operations or management of the Partnership.
  [Emphasis supplied.]

The Partnership Agreement could have included this same provision with regard to the voluntary assignment of limited partner rights, but it did not.  Instead, article 8.5 provides that the assignee has no limited partner rights “until such time” as it becomes a substitute limited partner.

33:
Park Cities Corp.,
 534 S.W.2d at 672; 
Dobson,
 594 S.W.2d at 180.

34:
Tex. Rev. Civ. Stat. Ann.
 art. 6132a-1, § 7.02(a)(4) (Vernon Supp. 2006).

35:
Id.
 art. 6132a-1, § 7.02(a) cmt.

36:
Id.

37:
See, e.g., Cockrell v. Tex. Gulf Suphur Co.,
 157 Tex. 10, 299 S.W.2d 672, 676 (1956) (holding that the words “subject to,” used in their ordinary sense, mean “subordinate to,” “subservient to,” or “limited by,” and their inclusion in a deed defines the nature, extent, and character of the estate conveyed).

38:
Id.

39:
Lyons v. Montgomery,
 701 S.W.2d 641, 643 (Tex. 1985).

40:
See Webster,
 128 S.W.3d at 229.

41:
Pursuant to the Assignments and the Partnership Agreement, the Foundations acquired only the “right to share in the income and losses of the Partnership and to be treated as the owner of a limited partnership interest for federal income tax purposes.”  
See supra
 note 27.  As we have discussed, according to the express provisions of the Partnership Agreement, these are not limited partner rights.

42:
Appellees argue that appellants took post-Assignment deductions on their federal income tax returns for the “full amount” of their partnership interests, thereby evidencing that they conveyed all of their limited partner rights to the Foundations.  However, we determine the effect of the Assignments from appellants’ objective intent as expressed therein, not from appellants’ alleged after-the-fact conduct.  
See In re Dillard Dep’t Stores, Inc.,
 186 S.W.3d 514, 515 (Tex. 2006) (orig. proceeding).

43:
The cases on which appellees rely as support for their position that appellants ceased to be limited partners upon assignment of their partnership interests to the Foundations are inapposite.  None of the statutes in those cases contained section 7.02(a)(4)’s provision that the assignee partner will continue to be a partner until the assignee becomes a partner.  Instead, the statutes expressly provided that the partner ceased to be a partner upon the assignment of his partnership interest.  
See In re Tip O Tex. RV Village,
 87 B.R. 195, 197 (Bankr. M.D. Fla. 1988); 
Everest Investors, LLC v. Investment Assocs., II,
 No. CX-96-554, 1996 WL 509840, at *2 (Minn. Ct. App. Sept. 10,  1996); 
Temple v. White Lakes Plaza Ass’n, Ltd.,
 15 Kan. App. 2d 771, 816 P.2d 399, 404, 406 (Kan. Ct. App. 1991).  Further, appellees’ reliance on 
Thomas v. Price
 is misplaced because the security agreement assigning the limited partner’s partnership interest gave the assignee the partner’s economic interests and the right to exercise the partner’s management rights in the event of a default.  718 F. Supp. 598, 601 (S.D. Tex. 1989), 
aff’d,
 975 F.2d 231 (5th Cir. 1992). Because all of these rights were expressly assigned, the 
Thomas
 court held that the limited partner ceased to be a partner after the default occurred.  
Id.
 at 607.  Here, however, the event that would trigger appellants’ ceasing to be limited partners—the Foundations’ acceptance as substitute limited partners—has not occurred.